**SO ORDERED: November 12, 2020.**



**James M. Carr**
**United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SALLY ANN PIERCE, | ) | Case No. 19-05324-JMC-13 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| SALLY ANN PIERCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 19-50159 |
| | ) | |
| TIME INVESTMENT COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**
**AND JUDGMENT ON THE PLEADINGS**

THIS PROCEEDING comes before the Court on *Time Investment Co., Inc.'s Motion for*

*Summary Judgment and Judgment on the Pleadings* filed by Time Investment Co., Inc.

("Creditor") on July 16, 2020 (Docket No. 19) (the "Motion").  The Court, having reviewed and

considered the Motion; *Time Investment Co., Inc.'s Brief in Support of its Motion for Summary Judgment* filed on July 16, 2020 (Docket No. 20) (the "Creditor's Brief"); the evidence designated in and attached to the Creditor's Brief, including the affidavits of Christopher Chicoine (the "Chicoine Aff."), Toni E. Steldt (the "Steldt Aff."), and Wendy Dubois (the "Dubois Aff."); *Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment and Judgment on the Pleadings* filed by Sally Ann Pierce ("Debtor") on August 20, 2020 (Docket No. 23); *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and Judgment on the Pleadings* filed on August 20, 2020 (Docket No. 24); *Plaintiff's Designation of Evidence* filed on August 20, 2020 (Docket No. 25); *Time Investment Co., Inc.'s Reply in Support of its Motion for Summary Judgment* filed on September 2, 2020 (Docket No. 28) (the "Reply"); the *Complaint to Avoid Wholly Unsecured Uniform Commercial Code Lien of Time Investment Company, Inc.* filed by Debtor on September 16, 2019 (Docket No. 1) (the "Complaint"); and the *Answer* filed by Creditor on October 4, 2019 (Docket No. 5); having heard the arguments and representations of counsel for Creditor and counsel for Debtor at a hearing on September 30, 2020, and being otherwise duly advised, now **DENIES** the Motion.

<u>Summary Judgment Standard</u>

Creditor moves the Court to enter summary judgment in its favor and against Debtor pursuant to Fed. R. Civ. P. 56, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056.

To obtain summary judgment, Creditor must show that there is no genuine dispute as to any material fact and Creditor is entitled to judgment as a matter of law.  Fed R. Civ. P. 56(a). The burden rests on Creditor, as the moving party, to demonstrate that there is an absence of evidence to support the case of Debtor, the nonmoving party.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 325, 106 S. Ct. 2548, 2554 (1986).  If Creditor demonstrates the absence of a genuine issue of fact for trial, the responsibility would shift to Debtor to "go beyond the pleadings" to cite evidence of a genuine issue of material fact that would preclude summary judgment.  *Id*. at 324, 106 S. Ct. at 2553.  In that event, if Debtor did not come forward with evidence that would reasonably permit the Court to find in her favor on a material issue of fact and if the law is with Creditor, then the Court would enter summary judgment against Debtor.  *Waldridge v. American Hoechst Corp*., 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 1355-56 (1986); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53; and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52, 106 S. Ct. 2505, 2511-12 (1986)).

## *Judgment on the Pleadings Standard*

Creditor also moves the Court to enter judgment on the pleadings in its favor pursuant to Fed. R. Civ. P. 12(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b). "In a motion for judgment on the pleadings, the court considers the pleadings alone, which consist of the complaint, the answer, and any written instruments attached as exhibits."  *Housing Auth. Risk Retention Group, Inc. v. Chicago Housing Auth.*, 378 F.3d 596, 600 (7th Cir. 2004) (citations omitted).  "The … court may also take judicial notice of matters of public record."  *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) (citations omitted).

## *Factual Background*

By her Complaint, Debtor seeks, in effect, to avoid any lien claimed by Creditor in real property that serves as Debtor's residence (the "Home").  Creditor asserts a lien in and against all or a portion of the Home, pursuant to documents by which (1) Debtor and her boyfriend, Willie Tarver ("Tarver"), purchased windows, siding and gutters (the "Purchased Goods") from Unique

Home Solutions ("Unique") and Unique agreed to install the Purchased Goods onto Debtor's Home; and (2) Creditor financed the obligations of Debtor and Tarver to Unique for the purchase of the Purchased Goods and Unique's provision of the installation services.  The documents that Creditor relies upon are:

(1)  "Sales/Purchase Order", Steldt Aff., Ex. A;

(2)  "Revolving Credit Application and Agreement", Steldt Aff., Ex. B (the "Credit Agreement");

(3)  "Assignment", Steldt Aff., Ex. C;

(4)  "Certificate of Completion", Steldt Aff., Ex. D;

(5)  "UCC Financing Statement", filed on April 24, 2014, in the Office of the Recorder of Henry County, Steldt Aff., part of Ex. E (the "2014 UCC-1"); and

(6)  "UCC Financing Statement" filed on November 16, 2018 in the Office of the Recorder of Henry County, Steldt Aff., part of Ex. E.

On June 28, 2013, before Creditor financed the Unique transaction, Debtor and Tarver borrowed $40,240 from MainSource Bank (the "Bank").  Debtor granted to Bank a mortgage (the "Mortgage") against her Home to secure the loan.  On July 16, 2013, Bank perfected its mortgage lien against the Home by recording the Mortgage in the Office of the Recorder of Henry County.  Chicoine Aff., Ex. D.

*Positions of the Parties*

With one major exception (referred to below as the "Residence Exception" and discussed hereinafter), Bankruptcy Code § 506 causes any asserted "secured claim" to be rendered an unsecured claim (effectively avoiding any asserted lien) if a debtor's obligations secured by a lien with senior priority exceed the value of the property claimed as collateral.  Said another way, if a

competing prior secured claim exhausts all of the collateral's value, then the subordinate lien is effectively avoided and creditor holds only an unsecured claim to be dealt with in a chapter 13 plan. Once the chapter 13 plan is completed and a debtor is granted a discharge of the unsecured claim, then the lien, that would have secured a claim outside of bankruptcy, is effectively avoided. Therefore, in this case, if and to the extent Bank's mortgage lien in and against Debtor's Home has priority over the lien claimed by Creditor and the debt secured by Bank's lien exceeds the value of the Home, then, unless the Residence Exception applies, Creditor holds only an unsecured claim against Debtor and Creditor's lien will be invalidated upon successful completion of Debtor's chapter 13 plan.

Debtor asserts that the value of the Home is less than the amount of the obligations Debtor owes to Bank secured by the Mortgage. For purposes of the Motion, Creditor does not contest that assertion. *See Haley v. Corcoran*, 2010 WL 4117267, at *3-4 (D. Md. 2010) (quotations and citations omitted) (in the context of a default judgment, a "default is not treated as an absolute confession … . Defendant Head failed to plead or otherwise assert a defense. Thus, all of Plaintiffs' factual allegations … are deemed admitted.").

Debtor contends that (1) Bank's mortgage lien is superior to Creditor's Uniform Commercial Code ("UCC") lien and exhausts all of the value of the shared collateral (all or any part of the Home); and (2) the Residence Exception is inapplicable. Creditor contends that its UCC lien is superior to Bank's mortgage lien and, if not, that the Residence Exception applies to prevent Debtor from using Bankruptcy Code § 506 to invalidate Creditor's UCC lien and render Creditor's claim unsecured.

*Reasoning*

The first set of issues is – (1) what is the nature of the Purchased Goods after they were annexed or affixed to Debtor's Home; (2) what was the intent of Debtor and Tarver regarding the Purchased Goods; (3) in what property may Creditor assert a lien; (4) what is the priority of Creditor's asserted UCC lien vis-à-vis Bank's mortgage lien; and (5) what are Creditor's rights and remedies with respect to the collateral in which Creditor asserts a lien?

Debtor and Tarver purchased goods and services from Unique.  All parties intended that Unique would annex the Purchased Goods to the Home owned solely by Debtor.  By July 30, 2013, Unique had installed the Purchased Goods onto Debtor's Home, annexing and affixing the Purchased Goods to her Home.  Creditor and Unique requested that Debtor alone certify that the installation work had been completed in a satisfactory manner.  She did so on July 30, 2013, executing her "Certificate of Completion".  Steldt Aff., Ex. D.

On or about July 31, 2013, Creditor provided financing for the Unique transaction and acquired the lien rights on which Creditor's claims are based.  Steldt Aff., ¶10; Dubois Aff., ¶ 15. Creditor asserts that Tarver held and continues to hold an ownership interest (presumably an undivided one-half interest) in the Purchased Goods notwithstanding their incorporation into Debtor's Home.  However, Creditor's position is not supported by Indiana's law regarding fixtures.

When goods are affixed to real property in a manner that satisfies Indiana's fixture test, then the personal property becomes real property and belongs exclusively to the owner of the real property.  In *Indiana Dep't of Nat. Res. v. Lick Fork Marina*, *Inc.*, 820 N.E.2d 152 (Ind. Ct. App. 2005), the Indiana Court of Appeals quoted with approval the following definition of a fixture from Black's Law Dictionary:  "[p]ersonal property that is attached to land or a building

and that is regarded as an irremovable part of the real property." *Id.* at 156.  In *Vic Bernacchi &*
*Sons, Inc. v. Loxas (In re Vic Bernacchi & Sons, Inc.)*, 170 B.R. 647 (Bankr. N.D. Ind. 1994), the
Court explained:  "A fixture is 'a thing that originally was a chattel, but has become a part of real
estate by reason of attachment thereto by one having an interest therein.' "  *Id.* at 651, *quoting*
*Ochs v. Tilton*, 103 N.E. 837, 838 (Ind. 1914).  Indiana applies a three-part test to determine if
and when an item of personal property becomes a fixture and part of the real estate:

    (1)    Was the item actually or constructively annexed to real estate?

    (2)    Was the item adapted to the use of the realty?

    (3)    Did the person with an ownership interest in the personal property intend that it
             become a permanent accession to the real property?

*See Vic Bernacchi*, *supra* at 651; *Milestone Contractors, L.P. v. Indiana Bell Telephone Co.,*
*Inc.*, 739 N.E.2d 174, 177 (Ind. Ct. App. 2000).  Of these three parts, the intent of the parties is
the most important element of Indiana's three-part test.  *Id.*  "While these tests have been
uniformly recognized by the courts of [Indiana] as controlling factors in determining whether an
article is personal property or a part of the real estate, … each case must in some degree be
controlled by its own particular circumstances."  *Greensburg Bank v. Dep't of Financial*
*Institutions*, 11 N.E.2d 1008, 1010 (Ind. Ct. App. 1938).

       Here, everyone involved knew and understood that the Purchased Goods would become
affixed to Debtor's real property, her Home.  Therefore, once Unique installed the Purchased
Goods, they then became an unremovable part of Debtor's Home and Tarver lost any ownership
interest therein.  This case is analogous to and controlled by holdings in Indiana and around the
country that when a tenant affixes the tenant's personal property to a landlord's real property, the
personal property is converted into a fixture and the tenant loses any ownership interest in the

affixed property.  *See id.* at 1011 ("We think the evidence shows without contradiction that the

bank intended to dedicate items Nos. 4, 48, 49, and 50 as a part of the freehold.  …  [W]e hold

that such articles were and are a part of the real estate.").

Next is the question – what is Creditor's interest in the Purchased Goods once they

became affixed to Debtor's Home?

Creditor correctly asserts that it held a UCC security interest in the Purchased Goods as

fixtures, but (1) Creditor is wrong about the priority of its security interest vis-à-vis Bank's

mortgage lien; and (2) Creditor holds no valid lien in Debtor's Home.

Creditor asserts that because the Purchased Goods constituted "consumer goods",

Creditor's security interest therein was perfected "automatically upon attachment".  Creditor's

general assertion may have been correct absent the conversion of the personal property (*e.g.* the

Purchased Goods) into fixtures and therefore real property (*e.g.* part of the Home).  However,

Creditor's security interest could not have attached, as Creditor asserts, on July 3, 2013.

Although Debtor and Tarver apparently signed the Credit Agreement on July 3, 2013, the Credit

Agreement expressly provides:

> If Credit is approved, the undersigned Buyer(s) hereby agree to be bound by the
> terms of the Revolving Creditor Agreement on the reverse side.

The Credit Agreement (including the provision for granting a security interest in the Purchased

Goods to Creditor) did not become effective until Creditor approved the credit application of

Debtor and Tarver and financed the Unique transaction.  That did not occur until July 31, 2013 at

the earliest.  Steldt Aff., ¶ 10; Dubois Aff., ¶ 15.  A security interest does not attach until the

security agreement granting the interest becomes effective and value has been given by the

secured party.  Ind. Code § 26-1-9.1-201(a) and -203(a) and (b).  Here that did not occur until

July 31, 2013 at the earliest.

Prior to the attachment of Creditor's security interest, (1) the Purchased Goods had become fixtures and a part of Debtor's Home; and (2) the Mortgage by which Debtor granted to Bank a lien in and against her Home including "all…fixtures now or hereafter part of her property" had been executed on June 28, 2013, and properly recorded on July 16, 2013. Chicoine Aff., Ex. D.

Creditor asserts that it obtained a lien in and against the Purchased Goods under Article 9 of the UCC.  However, UCC § 9-102(41) (Ind. Code § 26-1-9.1-102(41)) defines "fixtures" as "goods that have become so related to particular real property that an interest in them arises under real property law."  Once the Purchased Goods became fixtures (before Creditor's security interest attached), Article 9 of the UCC determines the relative priority of Creditor's UCC security interest and Bank's mortgage lien.

Creditor asserts that the Credit Agreement contains a grant by Debtor to Creditor of a mortgage against her Home.  However, the Credit Agreement does not constitute a valid mortgage under Indiana law and therefore conveys no mortgage lien in and against Debtor's real property.  The Credit Agreement, as a purported mortgage, meets virtually none of the requirements for a valid mortgage in Indiana.  *See SPCP Group, L.L.C. v. Dolson, Inc.*, 934 N.E.2d 771 (Ind. Ct. App. 2010) and Ind. Code § 32-21-2-3.  As a purported "mortgage", the Credit Agreement was never acknowledged and was not recorded in the mortgage records of the Office of the Recorder of Henry County; nor was it filed in the "real property records".  Even if effective, Creditor's "mortgage" would be inferior to Bank's properly recorded Mortgage.

The relative priorities of the conflicting mortgage lien of Bank (the "encumbrancer" in the statute) and the Article 9 security interest claimed by Creditor in the fixtures is resolved by Ind. Code § 26-1-9.1-334.  Subsections (c), (d), and (e) provide:

(c)     In cases not governed by subsections (d) through (h), a security interest in fixtures is subordinate to a conflicting interest of an encumbrancer or owner of the related real property other than the debtor.

(d)     Except as otherwise provided in subsection (h), a perfected security interest in fixtures has priority over a conflicting interest of an encumbrancer or owner of the real property if the debtor has an interest of record in or is in possession of the real property and:

    (1)     the security interest is a purchase-money security interest;

    (2)     the interest of the encumbrancer or owner arises before the goods become fixtures; and

    (3)     the security interest is perfected by a fixture filing before the goods become fixtures or with twenty (20) days thereafter.

(e)     A perfected security interest in fixtures has priority over a conflicting interest of an encumbrancer or owner of the real property if:

    (1)      the debtor has an interest of record in the real property or is in possession of the real property and the security interest:

        (A)     is perfected by a fixture filing before the interest of the encumbrancer or owner is of record; and

        (B)     has priority over any conflicting interest of a predecessor in title of the encumbrancer or owner;

    (2)     before the goods become fixtures, the security interest is perfected by any method permitted by IC 26-1-9.1 and the fixtures are readily removable:

        (A)     factory or office machines;

        (B)      equipment that is not primarily used or leased for use in the operation of the real property; or

        (C)     replacements of domestic appliances that are consumer goods;

    (3)     the conflicting interest is a lien on the real property obtained by legal or equitable proceedings after the security interest was perfected by any method permitted by IC 26-1-9.1; or

    (4) the security interest is:

        (A)     created in a manufactured home in a manufactured-home transaction; and

        (B)     perfected pursuant to a statute described in IC 26-1-9.1-311(a)(2).

A "fixture filing" is defined in Ind. Code § 26-1-9.1-102(40) as satisfying the requirements of Ind. Code § 26-1-9.1-502(a) and (b).  As such, to be a valid fixture filing, a UCC-1 must be filed in the "real property records" and "provide a description of the real property to which the collateral is related that is sufficient to give constructive notice of a mortgage under

[Indiana] law…".  Ind. Code § 26-1-9.1-502(b)(2) and (3).  To the extent it is an effective fixture filing, the 2014 UCC-1 was filed too late to prime the Bank's mortgage lien.

Creditor did not file a financing statement (the 2014 UCC-1) with respect to its claimed security interest in the Purchased Goods/fixtures until April 24, 2014.  Steldt Aff. ¶ 13, Ex. E.  However, that financing statement was filed long after perfection of Bank's mortgage lien on July 16, 2013.  Chicoine Aff., Ex. D.  None of the exceptions provided in subsection (d) or (e) of Ind. Code § 26-1-9.1-334 govern and subsection (h) is inapplicable.  Therefore, Bank's mortgage lien is superior to Creditor's security interest pursuant to UCC § 9-334(a) (Ind. Code § 26-1-9.1-334).

The final issue is "Is the Residence Exception applicable so as to prohibit the avoidance of Creditor's lien under Bankruptcy Code § 506?"  Bankruptcy Code § 1322(b)(2) sets forth the "Residence Exception".  That subsection allows a chapter 13 plan to modify the rights of secured claims except "a claim secured only by a security interest in real property that is the debtor's principal residence".  Bankruptcy Code § 101(13A) defines a "debtor's principal residence" as "a residential structure if used as the principal residence of the debtor, including incidental property".  As noted earlier, Creditor holds no valid mortgage against Debtor's Home, the "real property" that is Debtor's "residential structure".  Instead, Creditor may claim an inferior security interest in certain fixtures which are irremovably attached to the residential structure.

By holding an Article 9 security interest in those fixtures, Creditor's possible remedies are restricted as set forth in Ind. Code § 26-1-9.1-604(c).  Under that subsection, Creditor could remove the former Purchased Goods only if Creditor's security interest was superior to Bank's mortgage lien, which it is not.

Finally, given the Court's determination that once annexed to Debtor's Home the Purchased Goods became unremovable fixtures and the sole property of Debtor, the cases cited by Creditor on pp. 5-7 of Creditor's Brief and pp. 3-5 of the Reply are wholly inapposite.

*Conclusion*

Based upon the record before the Court and for the reasons set forth above, the Court DENIES the Motion.  A telephonic lawyers' status conference will be held on **December 2, 2020 at 10:00 a.m. EST**.  To participate, the parties should call (888) 273-3658, passcode 6349352.

IT IS SO ORDERED.

# # #